# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JON DICKERSON** | : | **DOCKET NO. 2:18-cv-1560** |
| **D.O.C. # 428915** | | |
| | | |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| | | |
| **DARRELL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus [doc. 1] filed by pro se petitioner Jon Dickerson ("petitioner"). The petitioner is an inmate in the custody of the Louisiana Department of Safety and Corrections. The respondent opposes the petition [doc. 13]. The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A. *Conviction*

Following a jury trial in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, Dickerson was convicted on June 24, 2013, of one count of second degree murder. *State v. Dickerson*, 140 So.3d 904, 907 (La. Ct. App. 3d Cir. 2014). On June 27, 2013, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence. *Id*. The charge related to the murder of Darrell Schaub, a friend of the petitioner.

-1-

### B. Direct Appeal

Petitioner sought review in the Louisiana Third Circuit Court of Appeal, raising the following assignments of error: (1) the evidence was insufficient to support the conviction and (2) the trial court erred in denying his request to ascertain the identity of confidential informants. *State v. Dickerson*, 140 So.3d 904, 905-07 (La. Ct. App. 3d Cir. 2014). The Third Circuit reviewed both claims on the merits and denied relief. *Id*. at 908–11. Dickerson then sought review in the Louisiana Supreme Court, which denied same on March 13, 2015. *State v. Dickerson,* 161 So.3d 638 (La. 2015). He indicates that he did not file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 4.

### C. State Collateral Review

Petitioner filed a pro se application for post-conviction relief in the trial court on April 6, 2016. Doc. 1, att. 3, pp. 64-89; Doc. 6, att. 1. In that application he asserted ineffective assistance of counsel as his sole basis for relief. The application was denied without a hearing on June 30, 2016, by order filed on July 8, 2016. *Id*. at 109–10. Dickerson next sought review in the Third Circuit, which denied same on April 4, 2017. Doc. 13, att. 9, p. 196. He sought review in the Louisiana Supreme Court, which denied same on September 28, 2018. *State ex rel. Dickerson v. State*, 253 So.3d 135 (La. 2018).

### D. Federal Habeas Petition

The instant petition was filed in this court on November 28, 2018, and raises claims of insufficient evidence and ineffective assistance of counsel. Doc. 1.

## II.
### LAW & ANALYSIS

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

#### B. *Exhaustion and Procedural Default*

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d

532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted

unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at

a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
### LEGAL ANALYSIS

#### A. *Timeliness*

Dickerson's conviction became final on June 11, 2015, when his time for seeking review of his direct appeal in the United States Supreme Court expired. Sup. Ct. R. 13.  Accordingly, **295 days** accrued against § 2244(d)'s one year limitations period before he filed his application for post-conviction relief in the trial court on April 1, 2016. The limitations period was then tolled until the Louisiana Supreme Court's decision on September 28, 2018, and an additional **56 days** accrued against the one year limit before Dickerson filed his federal habeas petition on November 28, 2018. Therefore, **351 days** have accrued against the one-year limit and the matter is timely.

### B. Exhaustion and Procedural Default

Finding that the application was timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim. Upon our review of the appellate record, we find that he properly sought review on the issue of the sufficiency of the evidence at every level of the state court on direct appeal. The issue of ineffective assistance of counsel was raised at every level during the post-conviction proceedings. He has therefore exhausted his state court remedies. In addressing the merits of the claim now raised in his federal habeas petition, the state court found no procedural defects and denied the claim on the merits. Therefore, we find no grounds for procedural default

### C. Merits Consideration

Petitioner raises two issues in the present petition: (1) he was denied his constitutional right to due process and equal protection where the evidence was insufficient to convict; and (2) trial counsel was ineffective in failing to investigate blood on a knife and hire a DNA and fingerprint expert.

#### 1. Insufficient Evidence

The petitioner first argues that there was insufficient evidence to convict him. The Third Circuit was the last to address this claim on the merits, and so its decision is the one under § 2254(d) review in this matter.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (*citing In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted). Thus, even though state law may require the exclusion of all reasonable hypotheses of innocence, a court on habeas review "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Under *Jackson*, both direct and circumstantial evidence can contribute to the sufficiency of evidence and circumstantial evidence alone may be enough to support the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict, and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The Louisiana Third Circuit conducted a review of the evidence presented at trial and determined that the jury did not believe the petitioner's testimony and that reliance on the evidence outside of witness testimony did not impinge on due process as such reliance was reasonable. *Dickerson*, 140 So.3d at 909. "Considering the record as a whole in the light most favorable to the prosecution, there was sufficient evidence for a reasonable trier of fact to find Defendant guilty beyond a reasonable doubt. As such, we find no merit in Defendant's sufficiency of evidence claim." *Id*.

Under Louisiana law, the state must negate "any reasonable probability of misidentification" to meet its burden of proof. *State v. Brady*, 414 So.2d 364, 365 (La. 1982). On

federal habeas review, however, "only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992). Under *Jackson*, the evidence may be found sufficient to support a conviction "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Id. (quoting Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991)).

In response to the instant petition, the State succinctly laid out the relevant evidence heard and considered by the jury in the trial on this matter and that is that on March 11, 2009, DeQuincy Police Officer Thomas Shirley was dispatched to the Pecan Trailer Park in reference to a drunk disturbance or disturbing the peace by public intoxication. Doc. 13, att. 5, p. 166-167. The disturbance involved the petitioner, Jon "Boo" Dickerson, and his sister. *Id*. Officer Shirley testified that the petitioner had a couple of scratches on him, "like he had been in a fight possibly." *Id*. at p. 187. The petitioner was arrested and searched at which time Officer Shirley found credit cards belonging to Darrell Schaub in the petitioner's blue jean pocket. *Id*. at p. 185.

Detective Tom Threet with the DeQuincy Police Department was assigned to investigate whether the petitioner was in lawful possession of the credit cards. *Id*. at p. 195. Detective Threet attempted to contact Darrell Schaub by phone but was unsuccessful. *Id*. at p. 197. Detective Threet found out that Mr. Schaub was staying at the Parkway Motel. *Id*. Around the same time, Officer Jeremy Brady had been informed of a missing person named "Schaub" who lived at the Parkway Motel. *Id*. at p. 198.

Detective Threet, Officer Brady and the Calcasieu Parish sheriff's officer on call, Mitch Taylor, went to the Parkway Motel. *Id*. When the officers approached the room where Mr. Schaub stayed Detective Threet noticed that the room was in disorder and that there was an odor. *Id*. at p.

201.  Detective Threet testified that the three exited the room, put up crime scene tape and contacted the forensics department.  *Id*. at 202.

Detective Micah Benoit with the Calcasieu Parish Sheriff's Department did a preliminary walk through and tested some of the stains he found in the room. Some of the stains in Mr. Schaub's room came back positive for blood. *Id*. at p. 231.  Detective Benoit testified that he and another officer were walking around outside the motel when something caught their eyes. *Id*. at p. 231-232.  They discovered a pair of glasses, and then a knife that had red stains on it.  *Id*. at 232. Detective Benoit stated that while they were looking, they smelled what he knew was decomposition.  *Id*. at 232. Towards the end of the motel, they saw two mattresses with flies on them and, as Detective Benoit got closer, he saw someone's feet underneath the mattresses. *Id*. One of the mattresses was removed and Mr. Schaub's body was found. *Id*. at 234-235. An aerial search was conducted, and the victim's vehicle was recovered near the petitioner's family home. Doc. 13, att. 7, pp. 197-199.

Detective Benoit testified they contacted the coroner's office while he and his team returned to the room and collected evidence.  Doc. 13, att. 5, p. 240.  According to Dr. Terry Welke, coroner for Calcasieu Parish, there was a cut or there were cuts on Mr. Schaub's neck that led to his death.  Doc. 13, att. 6, p. 247.  Dr. Welke suspected that a blood vessel or major artery in his neck had been cut because Mr. Schaub had "a fair amount of blood on the arms."  *Id*. at 241. There was no indication of a struggle or if Mr. Schaub was cut from behind.  Doc. 13, att. 8, p. 26. Dr. Welke testified that, because of decomposition, portions of Mr. Schaub head and body were skeletonized, and some of Mr. Schaub's skin and muscle were missing.   Doc. 13, att. 6, p. 235. Mr. Schaub was identified by his fingerprints through the FBI.  Doc. 13, att. 7, p. 162.

Cecil Perkins, manager of the Parkway Motel, knew the petitioner because he was related to the petitioner's mother and because the petitioner would visit occupants of the motel. Doc. 13, att. 6, pp. 67- 69. Perkins testified that the last time that he saw Mr. Schaub was March 7, 2009, when Mr. Schaub paid his rent. *Id*. at p. 72. Perkins recalled that on March 10, 2009, he was making his morning rounds when he noticed Mr. Schaub's door was cracked open. *Id*. at p. 72. Perkins knocked but no one answered; he called out to Mr. Schaub and still no response. *Id*. at p. 73-74. Perkins noted that Mr. Schaub's cell phone and laptop were left out. *Id*. at p. 74. Perkins locked the door and continued his rounds. *Id*. Later that morning, Perkins received a call from Mr. Schaub's mother, requesting that Perkins call Mr. Schaub's daughter. *Id*. at pp. 76-77. Perkins returned to the room to retrieve the cell phone. He called Mr. Schaub's daughter, who stated that she had just spoke with Mr. Schaub the day before – March 10, 2009. *Id*. at pp. 72-76.

Dawn Vercher's husband is a friend of the petitioner. *Id*. at p. 27. Vercher stated that at 6:15 a.m. on March 10, 2009, the petitioner appeared at her home, hollering for her husband. *Id*. at p. 28. She described him as "[b]loody, really bloody," and reported that he had blood on his "head, face, arms, pants, just everywhere." *Id*. at p. 28. Vercher testified that the petitioner told her that he and a friend were going to buy some drugs in Houston when someone shot his friend. The petitioner told Vercher that he had stabbed the person that shot his friend. *Id*. at p. 29.

Vercher told the jury that the petitioner left and returned about five minutes later. *Id*. at p. 31. Vercher testified that when he returned he was calmer but he still had blood on his face. *Id*. The petitioner asked if he could take a shower but Vercher refused. *Id*. She did, however, allow the petitioner to clean up in her kitchen sink with a sponge. *Id*. at p. 32. He also went into a back bedroom and changed his clothes. *Id*. Vercher testified that she threw the sponge away right after the petitioner left because she did not want it in her house. *Id*. at p. 34. Vercher allowed the

forensics unit to search her home. *Id*. at p. 38.  Although initial field tests reported a presence of blood, no blood or DNA was found at the Vercher home.  *Id*. at p. 200; doc. 13, att. 7, p. 65.

Alpha Jean Wood, a cashier at the Shell Station in DeQuincy, testified that the petitioner purchased 6 pints of Hennessey with Darrell Schaub's credit card.  Doc. 13, att. 6, pp. 133-135.  She recalled that the petitioner returned probably an hour and half later, asking for cash for the Hennessey.  Doc. 13, att. 6, p. 136.   Wood refused, and the petitioner left with the alcohol. *Id*.

Rhalie Austin, a forensic analyst at the Southwest Louisiana Crime Lab, testified that the swabs collected from the room by the forensics unit indicated a presence of blood.  Doc. 13, att. 7, p. 64.  Austin also confirmed that shoes found in the back of Officer's Shirley police cruiser indicated a presence of the victim's blood and DNA.  *Id*. at pp. 65, 97. She swabbed the inside of the shoes and, although the victim could be excluded as a possible contributor of DNA, the petitioner could not be excluded as a possible contributor of DNA inside the left shoe.  *Id*. at p. 98, pp. 126-127.  She also testified that the petitioner's jeans tested positive for blood and for the victim's DNA.  *Id*. at p. 62, 84.

After learning that the petitioner was found in possession of Mr. Schaub's credit cards, Detective Brent Young of the Calcasieu Parish Sheriff's Office interviewed the petitioner.  *Id*. at p. 162.  The petitioner reported he found the credit cards by "kicking a bag out of a railroad trestle." *Id*. at p. 188.

Detective Young also testified that less than two weeks after the body was found he was told that a confidential informant suggested that he should investigate someone named "Bookie" (later identified as Devin Patrick) in connection with Mr. Schaub's murder because Bookie had a bite mark on his hand.  *Id*. at pp. 223-224.  Detective Young interviewed Patrick on April 1, 2009, for twenty to thirty minutes.  *Id*. at pp. 194, 225.  Patrick did not tell Detective Young that he lived

or stayed at the Parkway Motel at the time of Mr. Schaub's murder.  Doc. 13, att. 8, pp. 21-22. Pictures were taken of Patrick and his hand during the interview.  Doc.13, att. 7, p. 234.  Detective Young saw discoloration to his hand, which Patrick reported was a burn mark that he got from frying chicken.  *Id*. at pp. 192-193.  Detective Young confirmed that he did not have any reason to doubt Patrick's explanation for the mark.  *Id*. at p. 193.

Detective Young again interviewed the petitioner on August 10, 2009.  *Id*. at p. 199.  By this time, the testing performed by Austin had revealed a DNA match to the victim from the petitioner's clothing and shoes.  *Id*. at p. 200.  Detective Young asked the petitioner whether he killed Mr. Schaub in self-defense, whether there was a fight that got out of hand, or whether he helped moving Mr. Schaub's body; the petitioner denied any involvement.  Doc. 13, att. 8, p. 194.

Detective Young testified that, on suggestion of the State, he re-interview Devin Patrick which he did.  *Id*. at p. 22.  Patrick confirmed that he had stayed at the motel, but not necessarily on the dates in question.  *Id*. at pp. 22-23.

At trial, the defense called Devin "Bookie" Patrick as a witness. Patrick testified that he did not know the victim, Darrell Schaub.  *Id*. at p. 33.  Patrick stated that he was told that a confidential informant had told the officers that he should be investigated because he had a bite mark on his hand. *Id*. at p. 37.   Patrick stated that he informed Detective Young that he had a grease burn from frying pork chops.  *Id*.  Patrick did not seek medical treatment for the burn.  *Id*. at p. 38.

At the time of trial, Patrick stated that his skin was all white in the picture, but the color had started to fill in the mark.  *Id*. at p. 51. At trial, Patrick testified that during the April 1, 2009 meeting, he was asked whether he was involved in Mr. Schaub's murder and whether he knew Mr. Schaub and/or the petitioner.  *Id*. at p. 35.  Patrick denied knowing Mr. Schaub and being involved

in his murder. Patrick stated that Detective Young visited him "[o]n a number of occasions" at his job after the initial interview.  *Id*. at p. 39.  Patrick stated that Detective Young would ask him "pretty much the same questions" that he previously asked.  *Id*. at p. 40.  Patrick denied killing, being present at the killing of Mr. Schaub, or moving or hiding Mr. Schaub's body.  *Id*. at pp. 49-50.

Finally, the petitioner testified in his own defense at trial. The petitioner stated that Mr. Schaub, who had been his friend for 6-7 months, allowed the petitioner to use his vehicle and his credit cards in exchange for cocaine.  *Id*. at pp. 122-123; 178.  He admitted that he initially lied to the officers when he told them that he found the credit cards in a black bag under a trestle, and that he did not know the owners of the cards. *Id*. at p. 123, 192. The petitioner claimed at trial that he lied because he was afraid of Patrick and afraid of going back to jail.  *Id*. at p. 123, 192.

The petitioner claimed at trial that the last time that he saw him alive, Mr. Schaub was in his room at the Parkway Motel with Patrick and a couple that the petitioner did not know. *Id*. at p. 125. The petitioner claimed that Schaub, Patrick and the couple were drinking alcohol and using cocaine. *Id*. at p. 133.  The petitioner took Mr. Schaub's truck and "rode around DeQuincy and just rode around in town, making passes and stuff, just doing things like that, drinking beer and doing lines of cocaine." *Id*. at p. 126.

The petitioner stated that in the early morning hours of March 10, 2009, he returned Mr. Schaub's truck and parked it in front of Mr. Schaub's room. *Id*. at p. 132. According to the petitioner, he walked in Schaub's room, but there was no one inside. *Id*. at p. 134.  The petitioner claimed that as he was leaving, he saw Patrick exiting the breezeway, breathing hard and not wearing a shirt. *Id*. at p. 134, 178.  The petitioner said that Patrick told him that he and Mr. Schaub had had an argument and told him to "[b]ack the truck up to the corner of the building." *Id*. at p.

135, 178.  The petitioner testified that after parking the truck as instructed, he exited the vehicle and walked around to the back of the truck.  *Id*. at p. 147.  He went down a hill, where Patrick was standing.  *Id*. at p. 148.  The petitioner claimed that Patrick told him "grab his hands," and the petitioner carried Mr. Schaub by his elbows.  *Id*. at pp. 148, 181. The petitioner contended that although he knew it was Mr. Schaub, he did not know Mr. Schaub's condition while they were moving him. Doc. 13, att. 8, pp. 148, 151. The petitioner claimed that as they were carrying Mr. Schaub, they were walking backwards, when he tripped and fell. *Id*. at p. 149.  The petitioner claimed that as he fell, he felt blood and "freaked out." *Id*. at p. 151.  The petitioner testified that he told Patrick that he wanted "no part of this," and he got up, drove off with Mr. Schaub's truck. *Id*.  He parked the truck near his parents' home where he cleaned himself up and changed his clothes.  *Id*. at p. 158.  The petitioner testified that he burned the clothes in his backyard.  *Id*. at p. 159-160.  The next day, he went to his aunt's house, where he spent the day sleeping and watching television. *Id*. at p. 164.  He denied going to the Vercher home that night, although he did confirm that he had previously stayed there and had kept clothes there.  *Id*. at pp. 184, 186.

Petitioner argues that the jury erred because it "incorrectly relied on the testimony of Dawn Vercher and the self-serving testimony of Devin Patrick, as well as the circumstantial evidence introduced at trial."  Doc. 1-2, p. 11.  However, as the Third Circuit noted, the jury obviously did not believe petitioner's testimony that he did not kill the victim.  As noted above, all credibility choices and conflicting inferences must be drawn in favor of the verdict, under *Jackson*. *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005). The jury's assessment of a witness's credibility is, likewise, generally beyond review under *Jackson*. *Schlup v. Delo,* 115 S.Ct. 851, 868 (1995). Dickerson presents nothing to overcome this court's deference to the jury's determinations, or the Third Circuit's crediting of same.

Furthermore, under *Jackson*, the copious evidence presented, described above, is sufficient to support a conviction. Notably, the victim's blood was found on the petitioner's clothes and shoes, the petitioner was in possession of three of the victim's credit cards and the victim's truck, and the petitioner admitted to burning the bloody clothing, which he conceded connected him to the crime. Accordingly, petitioner fails to show sufficient error in the Third Circuit's decision and is not entitled to habeas relief based on this claim.

### 2. *Ineffective Assistance of Counsel*

#### a. *Standards*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

### b. Application

Dickerson alleges ineffective assistance of counsel through the following two claims: (1) failure to hire a fingerprint expert to test for any fingerprints on the evidence that was seized from the victim's motel and the crime scene, and (2) failure to investigate and hire a Forensic Serology and DNA expert to test for blood and DNA on the knife that was found near the victim's body and for scrapping from the victim's fingernails. Petitioner raised both claims through a pro se application for post-conviction relief.

The trial court denied the claims, noting that they both stem from counsel not hiring specific experts for trial. The trial court held that petitioner failed to establish that he was entitled to an expert or that his counsel was ineffective for failing to retain one. Finding that petitioner could not show that his counsel's performance was unreasonable or that the proceedings were rendered unfair and suspect, the trial court held that petitioner could not show that he was prejudiced by counsel's actions and therefore, failed to meet the *Strickland* burden. Doc. 1, att. 3, pp. 109-110.

Dickerson's claim is essentially one of uncalled witnesses. *See Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. *See Id.; Alexander*

*v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). "The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.' " *Hinton v. Alabama*, 134 S.Ct. 1081, 1089 (2014) (citing *Strickland, supra*). Accordingly, a petitioner who alleges ineffective assistance of counsel based on the failure to call either a "lay or expert witness" must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted).

Petitioner does not identify a witness, demonstrate that he or she was available to testify, or show that the testimony would have been favorable to the particular defense. He merely makes the conclusory allegation that had trial counsel hired his own fingerprint analyst and DNA expert, it would have proven that Devon Patrick's fingerprints were on the knife. Accordingly, he has failed to meet his burden.

Moreover, hiring a DNA expert in this matter would have been an exercise in futility. Petitioner placed himself at the scene and with the victim's blood on his clothes via his own testimony. The DNA expert, Rhalie Austin, testified that the fingernail scrapings were not tested for blood, as they never are, but are saved for possible DNA testing later, and regardless, copious DNA evidence linked the petitioner to this crime scene. Doc. 13, att., 7, pp. 47-129. In the petition before this Court, petitioner admits that "the prints were of no value." Doc. 1, att, 2, p. 17. When no prints were viable, there was no need for the petitioner to hire an independent expert, and the petitioner had already placed himself on and around the victim on the day of the murder with his own testimony. Further, Joyce Lynn Miller, fingerprint analyst at the Southwest Louisiana Crim

Lab, testified that the knife was left outside, where it was cold and rainy, for a week before it was found, affecting the lack of latent prints on it. Doc. 13, att. 7, pp. 29-46.  Finally, defense counsel entered into a number of evidentiary stipulations regarding these items, as they either "tested negative or were not tested at all." Doc. 13, att. 6, pp. 183-185.

Petitioner has failed to establish that he would have been entitled to expert witnesses, or that his counsel was ineffective for failing to call same.  He has shown no prejudice resulted to him from his counsel's trial strategy, which is entitled to the deferential review of this Court.  The petitioner has not shown that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). Therefore, applying the deferential standard of review imposed by AEDPA, the state habeas court did not unreasonably apply *Strickland* and habeas relief is not warranted. These claims have no merit.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 6th day of August, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE